IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01950-LTB

DEMETRIUS THOMAS,

     Applicant,

v.

TRAVIS TRANI, and
JOHN W. SUTHERS, Attorney General of the State of Colorado,

     Respondents.

---

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on the amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 12) (the "Amended Application") filed *pro se* on September 2, 2014, by Applicant, Demetrius Thomas.   Mr. Thomas is challenging the validity of his conviction in El Paso County District Court case number 07CR308. Respondents have filed an Answer to Application for Writ of Habeas Corpus (ECF No. 41) ("the Answer") and Mr. Thomas has filed a Reply to Answer to Application for Writ of Habeas Corpus (ECF No. 46) ("the Traverse").   After reviewing the record, including the Amended Application, the Answer, the Traverse, and the state court record, the Court FINDS and CONCLUDES that the Amended Application should be denied and the case dismissed with prejudice.

## I.  BACKGROUND

Mr. Thomas was charged with attempted first degree murder, first degree assault, felony menacing, and a violent crime sentence enhancer based on his participation in a

drive-by shooting.   The jury at his first trial found Mr. Thomas not guilty of felony

menacing but was unable to reach a verdict on the remaining counts and a mistrial was

declared as to those counts.   Mr. Thomas was retried and a jury at his second trial found

him guilty of first degree assault and the violent crime sentence enhancer.   The judgment

of conviction was affirmed on direct appeal.   *See People v. Thomas*, No. 08CA1492

(Colo. App. May 20, 2010) (unpublished) (ECF No. 20-3).   On August 16, 2010, the

Colorado Supreme Court denied Mr. Thomas' petition for writ of certiorari on direct

appeal.   (*See* ECF No. 20-5.)

On March 4, 2011, Mr. Thomas filed in the trial court a postconviction motion

pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure.   (*See* ECF No. 20-1

at 10.)   On June 17, 2011, the trial court denied the Rule 35(c) motion.   (*See id.*)   The

trial court's order was affirmed on appeal.   *See People v. Thomas*, No. 11CA1572 (Colo.

App. Jan. 24, 2013) (unpublished) (ECF No. 20-8).

On March 15, 2013, Mr. Thomas filed in the trial court a second postconviction

motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure.   (*See* ECF

No. 20-1 at 8.)   On April 12, 2013, the trial court denied the second Rule 35(c) motion as

successive.   (*See id.*)   The trial court's order denying the second Rule 35(c) motion was

affirmed on appeal because the claims in the second Rule 35(c) motion were raised, or

could have been raised, in a prior appeal or postconviction proceeding.   *See People v.*

*Thomas*, No. 13CA0806 (Colo. App. May 15, 2014) (unpublished) (ECF No. 20-11).

The instant action was commenced on July 14, 2014.   Respondents filed a

Pre-Answer Response (ECF No. 20) that identified twenty-five separate claims for relief in

the Amended Application, including some with subparts.   In his reply (ECF No. 22) to the

Pre-Answer Response Mr. Thomas agreed that he is asserting the twenty-five claims

identified by Respondents.   The Court previously entered an Order to Dismiss in Part

(ECF No. 36) dismissing most of Mr. Thomas' claims as unexhausted and procedurally

barred.   The only claims that remain to be considered on the merits are claims 7(d), 8,

20(a)(i), and 23.   Mr. Thomas contends in his remaining claims that trial counsel was

ineffective by refusing to introduce evidence that Mr. Thomas was accused falsely (claim

7(d)); his retrial was barred by double jeopardy (claim 8); counsel on direct appeal was

ineffective by failing to raise a claim that Mr. Thomas' second trial was barred by double

jeopardy (claim 20(a)(i)); and the trial court erred by refusing to accept the jury's

inconsistent verdicts and ordering the jury to deliberate further (claim 23).

## II.  STANDARDS OF REVIEW

The Court must construe the Amended Application and other papers filed by Mr.

Thomas liberally because he is not represented by an attorney.   *See Haines v. Kerner*,

404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991).   However, the Court should not be an advocate for a *pro se* litigant.   *See Hall*,

935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued

with respect to any claim that was adjudicated on the merits in state court unless the state

court adjudication:

> (1)   resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   Mr. Thomas bears the burden of proof under § 2254(d).   *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a

statement of reasons by the state court for rejecting the claim.   *See Harrington v. Richter*,

562 U.S. 86, 98-99 (2011).   In particular, "determining whether a state court's decision

resulted from an unreasonable legal or factual conclusion does not require that there be

an opinion from the state court explaining the state court's reasoning."   *Id.* at 98.   Thus,

"[w]hen a federal claim has been presented to a state court and the state court has denied

relief, it may be presumed that the state court adjudicated the claim on the merits in the

absence of any indication or state-law procedural principles to the contrary."   *Id.* at 99.

Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas

petitioner's burden still must be met by showing there was no reasonable basis for the

state court to deny relief."   *Id.* at 98.   In other words, the Court "owe[s] deference to the

state court's *result*, even if its reasoning is not expressly stated."   *Aycox v. Lytle*, 196

F.3d 1174, 1177 (10th Cir. 1999).   Therefore, the Court "must uphold the state court's

summary decision unless [the Court's] independent review of the record and pertinent

federal law persuades [the Court] that its result contravenes or unreasonably applies

clearly established federal law, or is based on an unreasonable determination of the facts

in light of the evidence presented."   *Id.* at 1178.   "[T]his 'independent review' should be

distinguished from a full de novo review of the petitioner's claims."   *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).   *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).   The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Thomas seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.   *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."   *Id.* at 412.   Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.   Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).   If there is no clearly established federal law, that is the end of the Court's inquiry under § 2254(d)(1).   *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.   *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."   *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).   "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"

> *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S at 101 (internal quotation marks and citation omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated

the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Thomas bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural

defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless

error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v.

Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless

error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding

regardless of whether the state court found error or conducted harmless error review).

Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court

concludes it "had substantial and injurious effect" on the jury's verdict.   *Brecht*, 507 U.S.

at 637.   "A 'substantial and injurious effect' exists when the court finds itself in 'grave

doubt' about the effect of the error on the jury's verdict."   *Bland*, 459 F.3d at 1009 (citing

*O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).   "Grave doubt" exists when "the matter

is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the

error."   *O'Neal*, 513 U.S. at 435.   The Court makes this harmless error determination

based upon a review of the entire state court record.   *See Herrera v. Lemaster*, 225 F.3d

1176, 1179 (10th Cir. 2000).

If a claim was not adjudicated on the merits in state court, and if the claim also is

not procedurally barred, the Court must review the claim *de novo* and the deferential

standards of § 2254(d) do not apply.   *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th

Cir. 2004).

### III.   MERITS OF APPLICANT'S REMAINING CLAIMS

### A.   Claim 7(d)

Mr. Thomas contends in claim 7(d) that trial counsel was ineffective by refusing to

introduce evidence that Mr. Thomas was accused falsely.   The evidence he contends

counsel refused to introduce consists of letters from a witness, Krishna Ali, Sr., to Mr.

Thomas' co-defendant, Krishna Ali, Jr., stating they could place the blame on Mr. Thomas

as well as recorded conversations with two other witnesses, Tiana Campbell and Brian

Melvin, stating Mr. Thomas is innocent.

Respondents first argue that claim 7(d) is unexhausted and procedurally barred to

the extent Mr. Thomas relies on evidence of a recorded conversation with Brian Melvin

because Mr. Thomas did not mention such evidence in support of this ineffective

assistance of counsel claim in the state court proceedings.   The Court agrees.   In the

state court proceedings, Mr. Thomas argued in support of this ineffective assistance of

counsel claim only that counsel failed to introduce letters from Ali, Sr., to Ali, Jr., and the

recorded statement of Tiana Campbell and he made no mention of a recorded

conversation with Brian Melvin.   (*See* ECF No. 20-6 at 47-50.)   In any event, it appears

that Mr. Thomas has abandoned any argument regarding a recorded conversation with

Brian Melvin because he does not mention such a conversation in support of claim 7(d) in

the Traverse.   (*See* ECF No. 46 at 18-27.)

It was clearly established when Mr. Thomas was convicted that a defendant has a

Sixth Amendment right to the effective assistance of counsel.   *See Strickland v.*

*Washington*, 466 U.S. 668 (1984).   Ineffective assistance of counsel claims are mixed

questions of law and fact.   *See id.* at 698.

To establish counsel was ineffective Mr. Thomas must demonstrate both that

counsel's performance fell below an objective standard of reasonableness and that

counsel's deficient performance resulted in prejudice to his defense.   *See id.* at 687.

"Judicial scrutiny of counsel's performance must be highly deferential."   *Id.* at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."   *Id.*   It is Mr. Thomas' burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.   *See id.*   "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."   *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Under the prejudice prong Mr. Thomas must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Strickland*, 466 U.S. at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.*; *see also Richter*, 562 U.S. at 112 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable.").   In determining whether Mr. Thomas has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Thomas.   *See Boyd*, 179 F.3d at 914.

If Mr. Thomas fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed.   *See Strickland*, 466 U.S. at 697. Furthermore, conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief.   *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001).   Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."   *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

10

The Colorado Court of Appeals specifically recited and applied the two-part

*Strickland* test in rejecting Mr. Thomas' claim that trial counsel was ineffective by failing to

introduce the evidence at issue in claim 7(d).   The state court reasoned as follows:

2.   Letters

As discussed above, defendant alleged that his trial counsel was ineffective for not introducing letters from a witness, Ali, Sr., to his codefendant, Ali, Jr., purportedly stating, "[W]e should blame [the shooting] on [defendant]." Although no letter was referenced at trial, defense counsel attempted to introduce testimony of Ali, Sr. describing a discussion among Ali, Sr., another witness, and Ali, Jr., in which the other witness said, "[I]f it gets hectic, the best person that I see that could get pinned for it would be [defendant] because . . . he's gone [to California].   He would be the sacrificial lamb."   However, the trial court excluded Ali, Sr.'s testimony under CRE 403.

The postconviction court rejected defendant's argument that essentially the same discussion in the form of a letter should have been admitted, concluding: "The issue of Ali, Sr.'s statement was resolved on Direct Appeal and the Trial Court was upheld in excluding those statements.   Even if the letters referenced by [defendant] existed, [he] has not suggested how they would have been admissible.   Counsel was not deficient for failing to proffer inadmissible evidence." We perceive no basis for reversal.

Here, defendant did not allege that such a letter would have been admissible at trial.   Since the statement purportedly contained in the letter – that the blame could be placed on defendant – conveys the same message as the inadmissible testimony from Ali, Sr., which the trial court excluded under CRE 403, the letter was likewise inadmissible under CRE 403.   Thus, defendant cannot show prejudice stemming from counsel's failure to attempt to introduce the letter.   Therefore, we conclude that the postconviction court did not err in rejecting this ineffective assistance of counsel claim.   *Davis*, 871 P.2d at 772 ("*Strickland* requires that the defendant also affirmatively prove that he was prejudiced by the deficient performance of counsel.").

### 3.   A Witness's Recorded Statement

In his Crim. P. 35(c) motion, defendant also alleged that his trial counsel was ineffective for not "us[ing] a CD in the discovery with [defendant] and [a prosecution witness] were [sic] [the witness] admits that [defendant] is innocent and [another person] was the shooter."   The postconviction court rejected this argument: "This court has no information to suggest the existence of such a CD.   [The witness] testified at trial, was impeached by the District Attorney with her videotaped statement to police, and was vigorously cross-examined by Defense Counsel."

We conclude that the postconviction court properly denied this claim.   The record reflects that the witness testified at trial that although she was present during the shooting, she did not recall various details.   The prosecutor impeached her with her videotaped statement to police, in which she implicated defendant.   On cross-examination, the witness attempted to explain her previous statement as a response to police intimidation.   As the postconviction court found, the record does not contain a recording in which the witness alleges that defendant is innocent and that another person was the shooter.   In the absence of such a recording, the postconviction court correctly denied defendant's claim. *See* Crim. P. 35(c)(3)(IV) (postconviction court may deny postconviction claim where "the files and records of the case show to the satisfaction of the court that the factual allegations are untrue").

Furthermore, even if we assume the existence of such a recording, defendant does not allege that he was prejudiced by counsel's failure to introduce it.   In light of the witness's testimony and her prior statement, it does not appear that a different prior statement would have affected the outcome of the proceedings.   Thus, the postconviction court did not err in denying defendant's claim.   *Davis*, 871 P.2d at 774; *see also Osorio*, 170 P.3d at 800 (to obtain relief, defendant must prove both *Strickland* prongs by a preponderance of the evidence).

(ECF No. 20-8 at 9-13 (alterations in original).)

Mr. Thomas does not argue that the state court's decision with respect to the particular evidence at issue in claim 7(d) was contrary to *Strickland*.   In other words, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Mr. Thomas also fails to demonstrate that the state court's decision rejecting this ineffective assistance of counsel claim was an unreasonable application of *Strickland*. With respect to the letters from Ali, Sr., to Ali, Jr., the state courts determined the letters were not admissible as a matter of state law.   In light of that determination, it was not unreasonable to conclude counsel was not ineffective and that Mr. Thomas was not prejudiced by counsel's failure to introduce the letters.   *See Scott v. Romero*, 153 F. App'x 495, 497-98 (10th Cir. 2005) ("Counsel is not ineffective for failing to advance a futile argument.").   With respect to the recorded statement of Tiana Campbell, the record demonstrates her trial testimony, to the extent it was favorable to Mr. Thomas, was impeached with her videotaped statement to the police that implicated Mr. Thomas in the shooting.   Thus, the state court reasonably concluded that introduction of a different prior statement, if such a statement even existed, would not have created a substantial likelihood of a different result.   *See Richter*, 562 U.S. at 112 (to establish prejudice under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable.")

Ultimately, the Court concludes that Mr. Thomas is not entitled to relief with respect to claim 7(d) because he fails to demonstrate the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Id.* at 103.

## B.  Claims 8 and 20(a)(i)

Claims 8 and 20(a)(i) in the Amended Application are related.   Mr. Thomas contends in claim 8 that he was subjected to double jeopardy because he was retried after his first trial ended in a mistrial due to insufficient evidence.   (*See* ECF No. 12 at 27.)   He contends in claim 20(a)(i) that counsel on direct appeal was ineffective by failing to raise a claim that Mr. Thomas' second trial was barred by double jeopardy.   (*See* ECF No. 12 at 61.)   The Court previously determined that Mr. Thomas failed to exhaust state remedies with respect to claim 8 but deferred consideration of whether Mr. Thomas can establish cause and prejudice for that claim based on direct appeal counsel's alleged failure to raise the claim until the parties brief the merits.

In addition to his double jeopardy argument premised on the sufficiency of the evidence, Mr. Thomas contends in the Traverse that he was subjected to double jeopardy because his acquittal on the menacing count at his first trial precludes a second trial for first degree assault.   (*See* ECF No. 46 at 9.)   Mr. Thomas did not assert this particular double jeopardy argument in the Amended Application and he fails to demonstrate that the claim was fairly presented to the Colorado appellate courts either on direct appeal or in the postconviction proceedings.   Therefore, the Court's review of claims 8 and 20(a)(i) is limited to Mr. Thomas' contention that he was subjected to double jeopardy because there was insufficient evidence presented at his first trial.

The same *Strickland* standards relevant to claim 7(d) above apply to Mr. Thomas' assertion in claim 20(a)(i) that counsel on direct appeal was ineffective.   *See Cargle v.*

*Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (citing *Smith v. Robbins*, 528 U.S. 259, 285

(2000)).   The Tenth Circuit has described the proper analysis as follows:

> When, as here, a habeas petitioner's Sixth
> Amendment claim is based upon appellate counsel's failure to
> raise a particular issue, the Supreme Court has recognized
> that appellate counsel who filed a merits brief need not (and
> should not) raise every nonfrivolous claim, but rather may
> select from among them in order to maximize the likelihood of
> success on appeal.   Indeed, the winnowing out of weaker
> arguments so that counsel may focus the court's attention on
> those more likely to prevail is the hallmark of effective
> advocacy.
>
> Nevertheless, in certain circumstances, appellate
> counsel's omission of an issue may constitute ineffective
> assistance under *Strickland*.   In analyzing such claims, the
> court must consider the merits of the omitted issue.   If the
> omitted issue is so plainly meritorious that it would have been
> unreasonable to winnow it out even from an otherwise strong
> appeal, its omission may directly establish deficient
> performance.   On the other hand, if the omitted issue has
> merit but is not so compelling, we must examine the issue in
> relation to the rest of the appeal.   Habeas relief is warranted
> only if the petitioner establishes a reasonable probability of a
> favorable result had his appellate counsel raised the omitted
> issue.

*Malicoat v. Mullin*, 426 F.3d 1241, 1248-49 (10th Cir. 2005) (internal citations and

quotation marks omitted).   "[O]f course, if the issue is meritless, its omission will not

constitute deficient performance."   *Cargle*, 317 F.3d at 1202.

With respect to the substantive merits of Mr. Thomas' double jeopardy claim, "the

protection of the Double Jeopardy Clause by its terms applies only if there has been some

event, such as an acquittal, which terminates the original jeopardy."   *Richardson v.*

*United States*, 468 U.S. 317, 325 (1984).   Although Mr. Thomas insists that the first trial

ended in a mistrial because of insufficient evidence, the state court record demonstrates

a mistrial was declared after the jury was unable to reach a verdict.   Because "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected," there is no valid double jeopardy claim to prevent a retrial "[r]egardless of the sufficiency of the evidence at petitioner's first trial."   *Id.* at 326.

To the extent Mr. Thomas relies on *Lockhart v. Nelson*, 488 U.S. 33 (1988), in support of his double jeopardy claim, his reliance is misplaced.   The question presented in *Lockhart* was "whether the Double Jeopardy Clause allows retrial when a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and concludes that without the inadmissible evidence there was insufficient evidence to support a conviction."   *Id.* at 40.   The Supreme Court noted that "a reversal based on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary 'trial errors' as the 'incorrect receipt or rejection of evidence.'"   *Id.*   However, Mr. Thomas was not retried following reversal of his conviction.   Instead, he was retried after the jury at his first trial was unable to reach a verdict.   Therefore, the Court applies the law clearly established in *Richardson*.

The Colorado Court of Appeals applied the two-prong *Strickland* test to Mr. Thomas' claim that counsel on direct appeal was ineffective by failing to raise a double jeopardy challenge to his retrial.   (*See* ECF No. 20-8 at 13-16.)   The state court rejected the claim for two reasons.   First, Mr. Thomas failed to allege the double jeopardy issue was more likely to prevail than the issues actually raised on direct appeal.   (*See id.* at

15.)  Second, the state court reasoned that Mr. Thomas "cannot establish prejudice from

counsel's failure to raise a double jeopardy challenge because defendant's retrial did not

violate double jeopardy."  (*Id.*)  In support of this second point the state court cited a

Colorado Supreme Court case, *People v. Richardson*, 184 P.3d 755, 760 (Colo. 2008),

for the proposition that double jeopardy does not bar retrial when jury deadlock creates a

manifest necessity to declare a mistrial.  The Colorado Court of Appeals in Mr. Thomas'

case also determined that "defendant's retrial did not violate double jeopardy because the

evidence introduced at that the [sic] first trial was sufficient to sustain a conviction for first

degree assault, even though the first jury deadlocked on that count."  (ECF No. 20-8 at

7.)  The state court specifically noted that

> the prosecution introduced evidence that defendant said he
> was going to "merk" the victim on the night of the shooting;
> defendant went to the victim's house armed with a .40 caliber
> handgun; the victim was shot twice outside his house; empty
> shell casings from defendant's gun were recovered from the
> crime scene; and defendant tested positive for gunshot
> residue.

(*Id.* at 7-8.)  The Court previously noted in the Order to Dismiss in Part that the state

court record confirms the accuracy of this summary of the evidence against Mr. Thomas.

(*See* ECF No. 36 at 23.)

Mr. Thomas' selective parsing of the evidence presented against him does not

demonstrate he was entitled to an acquittal on all counts at his first trial that would have

barred a retrial.  The record is clear that his first trial ended in a mistrial because of a

hung jury on the counts other than felony menacing.  Under these circumstances, the

state court's determinations that Mr. Thomas' double jeopardy rights were not violated,

and that his ineffective assistance of appellate counsel claim premised on direct appeal counsel's failure to raise a double jeopardy claim lacked merit, were not contrary to or an unreasonable application of clearly established federal law.   To reiterate, under *Richardson*, "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected" and there is no valid double jeopardy claim to prevent a retrial "[r]egardless of the sufficiency of the evidence at petitioner's first trial."   *Richardson*, 468 U.S. at 326.   Therefore, Mr. Thomas is not entitled to relief with respect to claims 8 and 20(a)(i).

## C.  Claim 23

Mr. Thomas contends in claim 23 that the jury twice rendered inconsistent verdicts and the trial court erred by refusing to accept the inconsistent verdicts and ordering the jury to deliberate further.   He specifically asserts that his federal constitutional rights to due process and a fair trial were violated because the inconsistent verdicts demonstrate the prosecution failed to prove every element of first degree assault beyond a reasonable doubt.   The facts relevant to claim 23 were described by the Colorado Court of Appeals as follows:

> The verdict form provided to the jury prior to its deliberations included two special interrogatories directed to the requirements for the crime of violence count.   Specifically, the special interrogatories required the jurors to determine whether defendant (1) used, or possessed and threatened the use of, a firearm and (2) caused serious bodily injury.
>
> The jury found defendant guilty of first degree assault. In responding to the special interrogatories, however, the jury found that defendant had used, or possessed and threatened the use of, a deadly weapon, but that he had not caused serious bodily injury.

Because causing serious bodily injury is an element of first degree assault, the trial court noted that there was a problem with the verdict form.   The court asked the jurors to return to the jury room while it conferred with counsel.

Thereafter, the court concluded that there was an "obvious ambiguity on the face of the verdict form."   Over defendant's objection, the court advised the jurors that it appeared to the court that there was an ambiguity on the face of the form and ordered them to continue their deliberations, paying particular attention to the verdict form itself and to the instructions concerning the elements of the crimes at issue, as well as the other instructions.

After returning to the jury room, the jurors communicated to the court that they did not understand the court's comments regarding the ambiguity.   The court then specifically identified for the jurors what the court perceived as ambiguous, namely, the inconsistency between the guilty verdict and the special interrogatory response concerning serious bodily injury.   The court then sent the jury back for further deliberations.   At no time did the court suggest to the jurors what their verdict should be, nor has defendant asserted that the court's comments to the jury regarding the ambiguity were coercive in any way.

Following further deliberations, the jury returned the verdict form and special interrogatory responses, finding defendant guilty of assault in the first degree and now finding specifically that defendant had caused serious bodily injury. The court polled the jury, and all twelve jurors confirmed that this was their verdict.

Defendant then filed a motion for a new trial.   As pertinent here, defendant argued that the trial court erred in sending the jury back for continued deliberations.   The trial court denied the motion.

(ECF No. 20-3 at 5-7.)

The Colorado Court of Appeals reasoned as follows in rejecting this claim:

Finally, defendant contends that the trial court erred by

19

failing to accept the allegedly inconsistent verdicts and sending the jury back for further deliberations, and in denying his motion for a new trial, which was premised on the same purported error.   We are not persuaded.

In *People v. Tweedy*, 126 P.3d 303, 309 (Colo. App. 2005), the division held that "a trial court has the authority before accepting a verdict and before discharging a jury to send it back to correct a mistake or to clarify an ambiguity in its verdict."   Here, the trial court found that the verdict form, as originally tendered, was ambiguous on its face, stating:

> To find the defendant guilty of assault in the first degree the jury must necessarily have found that serious bodily injury was caused. . . . [T]hey marked the block that the assault occurred with a deadly weapon, but did not cause serious bodily injury.   It is an ambiguity on the face of the form.

We agree with the trial court that the verdict form as initially tendered by the jury on its face reflected an ambiguity or possible mistake.   Accordingly, pursuant to *Tweedy*, we conclude that the trial court properly sent the jury back for further deliberations and that the court did not abuse its discretion in denying defendant's motion for a new trial, which was based on that alleged error.   *See People in Interest of P.N.*, 663 P.2d 253, 256 (Colo. 1983) (appellate court will not interfere with a trial court's decision to grant or deny a new trial absent a clear showing of an abuse of discretion).

(ECF No. 20-3 at 14-15.)

It is apparent that the Colorado Court of Appeals did not explicitly address the

inconsistent verdicts claim as a federal constitutional claim.   However, as noted above,

"[w]hen a federal claim has been presented to a state court and the state court has denied

relief, it may be presumed that the state court adjudicated the claim on the merits in the

absence of any indication or state-law procedural principles to the contrary."   *Richter*,

562 U.S. at 99; *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (an adjudication on the

merits "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").   Neither party argues that the Colorado Court of Appeals did not adjudicate the inconsistent verdicts claim on the merits.   Therefore, the Court considers the inconsistent verdicts claim under the deferential standards in § 2254(d).

As noted above, the threshold question the Court must answer under § 2254(d)(1) is whether Mr. Thomas seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.   *See Williams*, 529 U.S. at 390. On direct appeal, Mr. Thomas cited a Colorado Supreme Court case, *People v. Griego*, 19 P.3d 1 (Colo. 2001), in support of his argument that his federal constitutional rights were violated as a result of the trial court's failure to accept the inconsistent verdicts. (*See* ECF No. 20-2 at 14-15.)   The federal constitutional principles implicated in *Griego* were the rights of a defendant in a criminal case "to have a jury decide his case" and "to have the prosecutor prove to that jury, beyond a reasonable doubt, every element of the charged offense."   *Griego*, 19 P.3d at 7.

Mr. Thomas specifically cites *In re Winship*, 397 U.S. 358 (1970), in the Amended Application in support of claim 23.   In *Winship*, the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."   *Winship*, 397 U.S. at 364.   Furthermore, clearly established federal law provides "that the Fifth Amendment requirement of proof beyond a reasonable doubt and

the Sixth Amendment requirement of a jury verdict are related." *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993).   Thus, "the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt." *Id.*

Mr. Thomas fails to demonstrate that the state court's decision rejecting the inconsistent verdict claim was contrary to *Winship*.   In other words, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Mr. Thomas also fails to demonstrate that the state court's decision rejecting the inconsistent verdict claim was an unreasonable application of *Winship*.   As discussed above, there was sufficient evidence presented at Mr. Thomas' second trial to support his conviction for first degree assault.   Therefore, the state court's rejection of Mr. Thomas' inconsistent verdicts claim was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

## V.   CONCLUSION

In summary, the Court finds that Mr. Thomas is not entitled to relief on his remaining claims.   Accordingly, it is

**ORDERED** that the amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 12) is denied and this case is dismissed with prejudice.   It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability

pursuant to 28 U.S.C. § 2253(c).

DATED November 2, 2015.

BY THE COURT:


  s/Lewis T. Babcock
LEWIS T. BABCOCK
United States District Judge